IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSEPH V. LAGANA,

    Plaintiff,

  v.

SAN FRANCISCO POLICE DEPT,

    Defendant.
                                      /

No. C 08-03392 CW

ORDER GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING STATE CLAIMS

This case arises out of several incidents involving Plaintiff and officers of the San Francisco Police Department. Originally, Plaintiff filed this case in state court by filling out a form complaint and checking boxes for causes of action alleging general negligence, intentional tort, assault, stalking, and violation of the First Amendment. Defendant removed based upon Plaintiff's First Amendment claim. Plaintiff originally named as Defendants the San Francisco Police Department (SFPD) and the City and County of San Francisco (CCSF). In its August 27, 2008 Order Granting Defendant's Motion to Dismiss with Leave to Amend, the Court explained that SFPD is an agency of CCSF and CCSF is the entity that may be sued. On October 6, 2008, Plaintiff filed a Third Amended Complaint (TAC) alleging violations of the First, Fourth and Fourteenth Amendments, violations of three federal statutes and many state law claims. CCSF now moves for summary judgment on all of Plaintiff's claims. Plaintiff has filed an opposition. CCSF

has not filed a reply. The motion was taken under submission on the papers. Having considered the papers filed by the parties, the Court grants, in part, Defendant's motion for summary judgment and remands the state law claims.

## BACKGROUND

The first incident about which Plaintiff complains occurred on May 15, 2008. According to Plaintiff, on that day, he was in front of the Ross Store located on Market and Fourth Streets in downtown San Francisco protesting the Pleasanton Police Department, President Bush and the fact that he lived in a "police state." Officer Leonard Cueba told Plaintiff to leave the area in front of the Ross Store and to cease his protesting. When Plaintiff refused, Officer Cueba grabbed Plaintiff by his sweater, causing the sweater and his undershirt to rip. Plaintiff states that, contrary to Officer Cueba's version of this event, he never was inside the Ross Store.

According to Officer Cueba, on May 15, he was working as additional security inside the Ross Store pursuant to a contract between Ross and CCSF. Plaintiff was yelling about suing one or more police departments and was taking photographs of Ross employees. Officer Cueba was asked by the store manager to escort Plaintiff out of the store. When Plaintiff saw Officer Cueba, he left the store. About fifteen minutes later, Plaintiff came back inside the store yelling about suing the police and taking photographs of Ross employees. Plaintiff was frightening the Ross employees. Officer Cueba asked Plaintiff to leave the store, and when he refused, Officer Cueba grabbed him by the arm and walked him out of the store. Officer Cueba states that he did not rip

2

Plaintiff's sweater.

The second incident took place on June 1, 2008, at approximately 3:45 a.m., when San Francisco Police Officers Joseph Toomey and Daniel Reyes arrested Plaintiff for being intoxicated in public. According to Officer Toomey, he and his partner responded to a call that Plaintiff was yelling and harassing customers on the sidewalk outside a nightclub at 1015 Folsom Street. When they arrived, they saw that Plaintiff was aggressively and inappropriately harassing club patrons on the sidewalk. They observed that Plaintiff smelled of alcohol, his eyes were bloodshot and his eyelids drooped. They also observed that Plaintiff was mumbling and had an unsteady gait. According to Plaintiff, he was protesting and promoting a nightclub event, he was not intoxicated or rude and did not belittle any club patrons.

The third incident took place on June 1, 2008, at approximately 8:00 p.m. Officer Raymond Kane and his partner, Officer Elias, responded to a call from the Palomar Hotel reporting a citizen's arrest by the hotel doorman. Officer Kane states that, according to the doorman, Plaintiff flicked a lit cigarette in the doorman's face and punched him. The doorman signed a citizen's arrest form for Plaintiff's arrest and the officers arrested him.

According to Plaintiff, the doorman approached him while he was protesting and told him to "shut up and leave." Plaintiff ignored him and went on protesting. The doorman left, but Plaintiff thought that he should get the doorman's name to report him to the police. Plaintiff approached the doorman and asked him for his name. The doorman responded by walking over to Plaintiff and taking a fighting stance. Plaintiff flicked his cigarette into

3

the street.  The doorman threw a punch and Plaintiff punched back in self-defense.  The doorman tackled Plaintiff and held him on the ground until the police arrived.  According to Plaintiff, the doorman started the incident and the police should not have arrested him.

The fourth incident occurred on June 4, 2008, just after Plaintiff was released from incarceration based on the above-mentioned arrest.  According to Plaintiff, he was walking down the street when Officer Toomey drove by and asked him what he was doing out of jail.  Plaintiff replied that the district attorney had dropped the charges against him.  Plaintiff stopped to converse with the doorman of a nightclub at the corner of Sixth and Mission Streets.  Officer Toomey came by again, handcuffed Plaintiff and searched him for fifteen minutes before releasing him.  According to Officer Toomey, on June 4, 2008, he responded to a call about a public nuisance outside the nightclub at Sixth and Mission Streets. When he arrived, nightclub personnel identified Plaintiff as the person making the disturbance by yelling and harassing nightclub customers.  Officer Toomey and his partner conducted a brief pat-down search of Plaintiff which only took one minute and Plaintiff was released without arrest.

The fifth incident took place on June 13, 2008.  According to Officer Larry Bertrand, on that day, he and his partner responded to a call from SFPD dispatch that a man was threatening a delivery person outside a Subway sandwich store on Mission Street.  Officers Frost and Lucas also responded to the call.  When Officer Bertrand and his partner arrived, Plaintiff had already been detained in handcuffs by Officers Frost and Lucas.  Plaintiff was yelling and

4

screaming obscenities and racial epithets. The delivery person did not want to press charges. Because Plaintiff appeared to be a danger to himself and others, Officer Bertrand transported him to the Psychological Emergency Services ward of San Francisco General Hospital for observation. According to Plaintiff, he never threatened anyone, he never met the unknown victim and Officers Frost, Lucas and Bertrand are part of a conspiracy to arrest him falsely. He also states that, sometime during the arrest, Officer Bertrand slammed him to the ground, choked him and kneed him. Officer Bertrand states that at no time did he use force against Plaintiff.

According to Officer Bertrand, a few weeks after this incident, he observed Plaintiff yelling loudly and screaming at people near the Powell and Market Street cable car turnaround. Because Plaintiff was acting erratically and aggressively, Officer Bertrand conducted a brief pat down search of Plaintiff for weapons. The search lasted no more than one minute. According to Plaintiff, Officer Bertrand returned to harass him and unlawfully searched and detained him.

A sixth incident occurred on July 14, 2008, when Plaintiff was arrested by Officers Robert Forneris and Paul Morgado for public drunkenness. According to Officer Forneris, he observed Plaintiff walking in the roadway shouting, "Fuck the police," and talking about a conspiracy against him among CCSF, the Mayor and SFPD Chief Fong. Officer Forneris declares that he smelled alcohol on Plaintiff's breath and Plaintiff admitted drinking a "couple of shots of wine." According to Plaintiff, he was not drunk, and yelled only once, "Fuck the police! Stop following me!"

5

1  Plaintiff states that the district attorney never filed
2  charges against him pursuant to any of his arrests.  Defendant does
3  not dispute this.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

DISCUSSION

I. Civil Rights Claims

Plaintiff alleges that CCSF violated his rights under the First, Fourth and Fourteenth Amendments to the Constitution.

7

Title 42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. Graham v. Connor, 490 U.S. 386, 393-94 (1989). Here, Plaintiff sues a municipality, CCSF. To prevail on a claim for violation of constitutional rights under 42 U.S.C. § 1983 against a municipality, a plaintiff must show: (1) that he or she suffered a deprivation of a constitutionally protected interest; and (2) that the deprivation was caused by an official policy, custom or usage of the municipality. Monell v. New York Dep't of Social Services, 436 U.S. 658, 690-91 (1978); City of Canton v. Harris, 489 U.S. 378, 390-91 (1989). Municipal liability based on unconstitutional acts of municipal employees cannot be established on the basis of respondeat superior, but rather requires proof that the harm was caused by the policy or custom of the municipality. Monell, 436 U.S. at 694. A plaintiff must show that "the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Ulrich v. City & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002) (quoting Monell, 436 U.S. at 694)). Although the liability of municipalities does not depend upon the liability of individual officers, it is contingent on a violation of constitutional rights. Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994). The inadequacy

8

of police training can form the basis for municipal liability "only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact." <u>City of Canton</u>, 489 U.S. at 388.

Defendant argues that it is entitled to summary judgment on Plaintiff's <u>Monell</u> claims because he has failed to provide any evidence that Defendant has or had a policy or custom that caused his civil rights to be violated. In his opposition, Plaintiff argues that the motion must be denied because the only evidence offered by Defendant is the testimony of the officers and there is no evidence that Plaintiff was drunk on the occasions he was arrested for being intoxicated.

There are disputes of fact regarding the incidents upon which Plaintiff bases his claims against Defendant. However, even if the disputes of fact were resolved in Plaintiff's favor, and, even if that led to the conclusion that Plaintiff's constitutional rights were violated, Plaintiff still must submit evidence to establish that Defendant caused the constitutional violations through enforcement of a policy or custom or its failure to train its police officers. Plaintiff has failed to submit any such evidence. In his TAC, Plaintiff states that there is a lengthy track record of SFPD officers abusing their "use-of-force ability" and "arresting the public in a wanton fashion" and that it is a matter of custom and practice for officers of the SFPD to use excessive force and to search citizens unlawfully. TAC at ¶¶ 55, 121-25. He also alleges that CCSF ignores the officers' misconduct because SFPD's ranks are low, there is an insufficient number of available applicants and CCSF is desperate to retain the officers it employs.

9

1  TAC at ¶ 123.  Plaintiff's conclusory allegations are insufficient
2  to establish that Defendant has a policy or custom that causes its
3  police officers to engage in unconstitutional acts or that
4  Defendant fails to train its officers properly.
5  　　　Plaintiff also argues that the motion must be denied because
6  Defendant does not raise a defense to Plaintiff's First and
7  Fourteenth Amendment claims.  Plaintiff's argument is not well-
8  taken.  As explained above, whether constitutional violations
9  occurred is not the question in this motion.  Rather, Plaintiff
10 must provide evidence that the constitutional violations were
11 caused by Defendant's policy, custom or failure to train its
12 officers.  Because Plaintiff has failed to submit such evidence,
13 Defendant's motion for summary judgment on Plaintiff's <u>Monell</u>
14 claims is granted.

II. Other Federal Claims

　　　In addition to claims under § 1983, Plaintiff alleges three other federal claims: that Defendant violated 18 U.S.C. §§ 241 and 242 and 42 U.S.C. § 1985.

　　　Sections 241 and 242 are criminal statutes.  Plaintiff, as a private citizen, may not bring a criminal action against Defendant.

　　　Section 1985 prohibits civil rights conspiracies.  To state a claim under § 1985, a plaintiff must allege: (1) the purpose of the conspiracy was to deprive the plaintiff of equal protection or to obstruct the course of justice in the state; (2) the defendant intended to discriminate against the plaintiff; (3) the defendant acted under color of state law; and (4) the acts done in furtherance of the conspiracy resulted in an injury to the plaintiff's person or property.  <u>Sykes v. California Dep't of Motor</u>

United States District Court
For the Northern District of California

1  Vehicles, 497 F.2d 197, 200 (9th Cir. 1974).  The second of these
2  four elements requires that, in addition to identifying a legally
3  protected right, a plaintiff must demonstrate a deprivation of that
4  right motivated by "some racial, or perhaps otherwise class-based,
5  invidiously discriminatory animus behind the conspirators' action."
6  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).
7  Plaintiff fails to provide any evidence that Defendant
8  discriminated against him or intended to discriminate against him
9  based on a racial or class-based animus.

10       Thus, Defendant's motion for summary judgment on these claims
11 is granted.

12 III. State Claims

13       Plaintiff alleges Defendant violated many state laws and
14 provisions of the state constitution.  Title 28 U.S.C. § 1367(c)(2)
15 authorizes district courts to decline to exercise supplemental
16 jurisdiction over a state law claim if "the claim substantially
17 predominates over the claim or claims over which the district court
18 has original jurisdiction."  Here, the main federal claim is that
19 of civil rights violations based on Monell.  The lawsuit primarily
20 concerns state law violations.  In fact, in Plaintiff's original
21 complaint filed in state court, the only mention of a federal claim
22 was a reference to the First Amendment.

23       In determining whether to decline to exercise supplemental
24 jurisdiction, the Court should consider whether remanding the rest
25 of the case to state court will accommodate the values of "economy,
26 convenience, fairness, and comity."  Executive Software North
27 America, Inc. v. United States District Court, 24 F.3d 1545, 1557
28 (9th Cir. 1994).  Although Defendant removed this case very soon

11

after it was filed in state court, because state claims predominate, the values of economy, convenience, fairness, and comity favor remanding the state law claims.

IV. Request to Amend Opposition

Plaintiff requests that he be allowed to amend his opposition because he was prejudiced by the fact that he was given only ten days to prepare it and he should be allowed thirty-five calendar days. Civil Local Rule 7 governs the filing of motions and oppositions. A motion must be filed, served and noticed for hearing not less than thirty-five days after service of the motion. Civil L.R. 7-2(a). Any opposition to the motion must be served and filed not less than twenty-one days before the hearing date. Civil L.R. 7-3(a). Thus, all oppositions to motions must be filed within two weeks after service of the motion, not thirty-five days as Plaintiff argues. Plaintiff's request to file an amended opposition is denied.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted on Plaintiff's federal claims. Plaintiff's request to amend his opposition is denied. Plaintiff's state law claims are remanded to the Superior Court of the County of San Francisco.

IT IS SO ORDERED.

Dated: 10/14/09

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

JOSEPH LAGANA,

      Plaintiff,

v.

SAN FRANCISCO POLICE DEPT et al,

      Defendant.

Case Number: CV08-03392 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 14, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Joseph Victor Lagana
3064 East 15th St.
Oakland, CA 94601

Dated: October 14, 2009

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

13